UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN MILLIRON,

       Plaintiff,                                    Hon. Sally J. Berens

v.                                                  Case No. 1:22-cv-782

U.S. DEPARTMENT OF DEFENSE, et al.,

       Defendants.

_____/

**OPINION AND ORDER**

Plaintiff Ryan Milliron initiated this action on August 25, 2022, when he filed a complaint pursuant to the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* (FOIA), seeking relief against the U.S. Department of Defense (DOD) and the Federal Bureau of Investigation (FBI). (ECF No. 1.) The DOD was dismissed on July 24, 2025, pursuant the parties' stipulation. (ECF Nos. 56 and 57.)

Now before the Court is the FBI's Motion for Summary Judgment. (ECF No. 65.) (ECF No. 41.) The motion is fully briefed and ready for decision. (ECF Nos. 68 and 69.) Milliron requests summary judgment in his favor in his opposing brief, although he has not filed a formal motion for summary judgment. For the following reasons, the FBI's motion will be **GRANTED IN PART AND DENIED IN PART**.[1] Milliron's request for summary judgment will be **DENIED**.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the Court conduct all further proceedings in this case, including entry of judgment.

## I.  Background

Milliron's complaint concerns several FOIA requests to the DOD and the FBI. (ECF No. 1.) As to the FBI, Milliron submitted three requests, two on June 5, 2022, and one on June 6, 2022. (*Id.* at PageID.6–7.) The first June 5, 2022 request, assigned FBI Freedom of Information/Privacy Act (FOIPA) Request Number 1549040-000, sought "copies of any 302's or 1023's for Rodney Joffe, Manos Antonakakis, L. Jean Camp, Mike McIntire (NYT), or April Lorenzen during the period of March 1, 2016 through March 1, 2019 that are relevant to Russia, Trump, Alfa Bank or the hack of the DNC" (302/1023 Request). (ECF No. 66-1 at PageID.191, 219.) By letter dated June 13, 2022, the FBI acknowledged receipt of this request and notified Milliron of the assigned FOIPA number. (*Id.* at PageID.221–22.) By letter dated December 14, 2022, the FBI issued a *Glomar* response and informed Milliron that, to the extent his request sought 302s or 1023s for the named individuals related to Russia, Trump, Alfa, or DNC, the FBI would neither confirm nor deny the existence of such records pursuant to FOIA Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6) and (b)(7)(C), as "[t]he mere acknowledgement of the existence of records on third party individuals, with the exception of records that have been officially acknowledged, could reasonably be expected to constitute an unwarranted invasion of personal privacy."[2] The agency further stated that its acknowledgement of whether it does or does not have "source-related records about an individual or entity could reasonably be expected to compromise the identity of a source." Therefore, it neither confirmed nor denied the existence of source-related records pursuant to FOIA Exemption 7(D), 5 U.S.C. § 552(b)(7)(D). (*Id.* at PageID.241–42.) In response to Milliron's

---

[2] A *Glomar* response "is proper if the fact of the existence or nonexistence of agency records falls within a FOIA exemption." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). In other words, an agency may issue such response if the existence or nonexistence of the requested records would cause the harm sought to be prevented by the exemption. *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982).

October 9, 2024 letter to the FBI requesting that it reconsider certain responses, the FBI determined that no additional information could be provided regarding his request for 302s or 1023s for Rodney Joffe or Manos Antonakakis. (ECF No. 42.)

The second June 5 request, assigned FOIPA Request Number 1548979-000, sought "all email records between Rodney Joffe and FBI agent Tom Grasso for the period of April 1, 2016, through April 1, 2017, that relate to: DNC, Alfa Server, Trump, Russia, Georgia Tech, April Lorenzen" (Emails Request). (ECF No. 66-1 at PageID.192, 229.) By letter dated June 13, 2022, the FBI acknowledged receipt of this request and notified Milliron of the assigned FOIPA number. (*Id.* at PageID.231–32.) On March 1, 2023, the FBI informed Milliron that it had reviewed 29 pages and was releasing one page in full. (*Id.* at PageID.195, 246.) On March 3, 2025, pursuant to Milliron's request for reconsideration, the FBI released 14 additional pages in part and withheld certain information pursuant to FOIA Exemptions 6, 7(C), and 7(E), 5 U.S.C. § 522(b)(6), (b)(7)(C), and (b)(7)(E). (*Id.* at PageID.197, 266–26.)

The June 6, 2022 request, assigned Request Number NFP-139344, sought "copies of contracts between the FBI and any of the following entities: Packet Forensics, Bitvoyant (Bluevoyant), Neustar, Zetalytics, Vostrum Holdings" (Contracts Request). (*Id.* at PageID.193, 235.) By letter dated June 21, 2022, the FBI acknowledged receipt of this request and notified Milliron of the assigned FOIPA number. (*Id.* at PageID.237–38.) After Milliron provided additional information for the search, the FBI determined that 49 pages of material were withheld in full pursuant to FOIA Exemptions 1, 3, 4, 6, 7(C), and 7(E), 5 U.S.C. § 522(b)(1), (b)(3), (b)(4), (b)(6), (b)(7)(C), and (b)(7)(E). (*Id.* at PageID.196, 261–62.) Following Milliron's request for reconsideration of the Contracts Request, the FBI advised Milliron that 49 pages were reviewed

and withheld in full pursuant to FOIA Exemptions 1, 3, 6, 7(C), and 7(E). (*Id.* at PageID.197, 271–72.)

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The summary judgment procedure is generally appropriate to resolve disputes regarding FOIA exemptions because they present "purely legal questions." *Rimmer v. Holder*, 700 F.3d 246, 255 (6th Cir. 2012). "In FOIA cases, including those where a *Glomar* response is issued, summary judgment may be based solely on information provided in the agency's supporting declarations." *Smith v. CIA*, 393 F. Supp. 3d 72, 78 (D.D.C. 2019). "[C]ourts may rely on non-conclusory agency affidavits demonstrating the basis for withholding if they are not contradicted by contrary evidence in the record or by evidence of the agency's bad faith."[3] *Reporters Comm. for Freedom of the*

---

[3] A court may determine whether the agency has complied with its FOIA obligations by considering a "*Vaughn* index," which may take the form of an affidavit or declaration describing the documents responsive to the request and indicating in sufficient detail the reasons for redactions or withholding of documents to allow the court to make an independent and informed assessment of the asserted exemption's application. *See Rugiero v. U.S. Dep't of Just.*, 257 F.3d

4

*Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021)). Such "affidavits are entitled to a presumption of good faith absent evidence to the contrary." *Rimmer*, 700 F.3d at 255 (citing *Jones v. FBI*, 41 F.3d 238, 242–43 (6th Cir. 1994)).

### III. Discussion

#### A. Statutory Background

FOIA provides that an agency must, "upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, . . . make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). FOIA embodies "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Department of the Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (quotation marks omitted). An agency may withhold or redact information that falls within one of the nine statutory exemptions. 5 U.S.C. § 552(b); *see Cincinnati Enquirer v. Dep't of Just.*, 45 F.4th 929, 932 (6th Cir. 2022). In accordance with the Act's policy of full disclosure, the exemptions must be "narrowly construed." *Rimmer*, 700 F.3d at 255 (citing *Department of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). The agency bears the burden "to justify the withholding of any requested documents." *United States Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). A court reviews the agency's invocation of an exemption *de novo*. 5 U.S.C. § 552(a)(4)(B). "If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the

---

534, 544 (6th Cir. 2001). In the Sixth Circuit, "no precise form is dictated for [*Vaughn*] affidavits; any form is acceptable which 'enables the court to make a reasoned, independent assessment of the claim[s] of exemption.'" *Jones v. FBI*, 41 F.3d 238, 242 (6th Cir. 1994) (quoting *Vaughn v. United States*, 936 F.2d 862, 866–67 (6th Cir. 1991) (alteration in original)).

district court should uphold the government's position." *Rugiero*, 257 F.3d at 544 (quoting *Ingle v. Dep't of Just.*, 698 F.2d 259, 265 (6th Cir. 1983), *abrogated on other grounds by Dep't of Just. v. Landano*, 508 U.S. 165 (1993)).

### B. FBI's Motion

The FBI addresses Milliron's challenges to its responses to both the Emails Request and the 302/1023 Request in its supporting brief. (ECF No. 66 at PageID.175–77.) Because Milliron affirms in his response that he is challenging only the FBI's response to the 302/1023 Request for the Joffe and Antonakakis interviews and is not challenging the production of the Joffe and Grasso emails (ECF No. 68 at PageID.279), the Court limits its analysis to that request.

Pursuant to its motion, the FBI argues that it properly issued a *Glomar* response to Milliron's request for records containing information pertaining to a third party and supported that response by invoking Exemptions 6, 7(C), and 7(D). In support of its motion, the FBI submits a declaration from Shannon R. Hammer, the Acting Section Chief of the FBI's Record/Information Dissemination Section, Information Management Division. (ECF No. 66-1.) Milliron responds that the FBI fails to carry its summary judgment burden and that he is therefore entitled to summary judgment because the FBI's prior disclosure regarding Joffe's status as a confidential human source and Antonakakis's publicly-available email confirming his multiple interviews with Special Counsel Durham's team render a *Glomar* response unavailable. He further contends that the cited exemptions are inapplicable to both Joffe and Antonakakis.

As an initial matter, the Court addresses Milliron's assertion that it should strike the Hammer Declaration based on the declarant's failure to acknowledge the FBI's prior confirmation of Joffe's status as a confidential human source (CHS). Milliron asserts that Ms. Hammer's statements providing the agency's rationale for a *Glomar* response, which fail to acknowledge the

6

FBI's confirmation of Joffe as a CHS in a prior trial, are simply "'an attempt to create a sham fact issue.'" (ECF No. 68 at PageID.289 (quoting *France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016).)

This argument is meritless. Milliron cites no FOIA case in which a court struck an agency's supporting declaration simply because it failed to recognize a potential basis for an official confirmation or acknowledgement. His reliance on the Sixth Circuit's "sham affidavit" doctrine set forth in *France* is misplaced. That doctrine applies in situations in which a nonmovant attempts to create an issue of fact, "*after a motion for summary judgment has been made*, . . . [by] fil[ing] an affidavit that contradicts his earlier sworn testimony." *France*, 836 F.3d at 622 (citing *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986)) (italics added). Milliron fails to demonstrate that Ms. Hammer's statements contradict any prior sworn testimony.

    1.    ***Glomar* Response**

An agency may assert a so-called *Glomar* response when even acknowledging whether responsive records exist would cause a harm addressed by a FOIA exemption. *See Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007). "A Glomar response is 'an exception to the general rule that agencies must acknowledge the existence of information responsive to a FOIA request and provide specific, non-conclusory justifications for withholding that information.'" *Marino v. DEA*, 685 F.3d 1076, 1078 n.1 (D.C. Cir. 2012) (quoting *Roth v. Dep't of Just.*, 642 F.3d 1161, 1178 (D.C. Cir. 2011)). When an agency issues a *Glomar* response, it "need not include such records in a *Vaughn* index, as long as its affidavits establish that, if the records existed, a specified FOIA exemption would apply." *ACLU of Mich. v. FBI*, 734 F.3d 460, 464 n.2 (6th Cir. 2013).

A *Glomar* response may be unavailable to the agency in certain situations. That is, a "plaintiff can overcome a *Glomar* response by showing that the agency has already disclosed the fact of the existence (or nonexistence) of responsive records, since that is the purportedly exempt

information that a *Glomar* response is designed to protect."[4] *ACLU v. CIA*, 710 F.3d 422, 427 (D.C. Cir. 2013). For example, a law enforcement agency may not issue a *Glomar* response where it has previously confirmed the individual's connection with the agency as an informant. *See Boyd v. U.S. Dep't of Just.*, 475 F.3d 381, 388 (D.C. Cir. 2007).

### a.     Joffe

Milliron contends that the FBI's *Glomar* response was inappropriate as to Joffe because the FBI previously disclosed the fact of Joffe's status as a CHS in the matter of *United States v. Sussmann*, No. 1:21-cr-582 (D.D.C.). (ECF No. 68 at PageID.287.) Milliron attaches select pages of the transcript from that trial to support his position. (ECF No. 68-3 (May 17, 2022 morning session); ECF No. 68-4 (May 25, 2022 morning session); (ECF No. 68-5 (May 17, 2022 afternoon session).) The FBI contends that attorney and other trial references to Joffe during the Sussmann trial do not constitute an "official acknowledgment" that defeats a *Glomar* response.

The Court finds the Ninth Circuit's decision in *Pickard v. Department of Justice*, 653 F.3d 782 (9th Cir. 2011), instructive. The plaintiff in *Pickard*, a federal inmate, submitted a FOIA request to the DEA requesting information pertaining to an informant named Skinner. Skinner had testified at Pickard's criminal trial and several DEA agents testified to his status as a confidential informant. *Id.* at 786. The DEA issued a *Glomar* response to Pickard's request. In response to the DEA's motion for summary judgment based on its *Glomar* response, Pickard submitted several exhibits, including evidence that DEA agents had testified at his trial about Skinner's status and

---

[4] If the asserted interest is a third party's privacy, the agency may not use a *Glomar* response if the requestor provides a waiver from the individual, proof that the individual is deceased, or shows that the public interest outweighs the individual's interest. *See Donato v. Executive Office for U.S. Attorneys*, 308 F. Supp. 3d 294, 306 (D.D.C. 2018) (citing exceptions to the FBI's standard policy of issuing a *Glomar* response to FOIA requests seeking third party information where "the requester submits a privacy waiver or proof of death, or demonstrates an overriding public interest in disclosure").

activities as a confidential informant. The district court granted the DEA's motion, finding its *Glomar* response valid because it had not "officially confirmed" Skinner's identity as an informant as required by 5 U.S.C. § 552(c)(2). Citing the "officially acknowledged" standard from *Afshar v. U.S. Department of State*, 702 F.2d 1125 (D.C. Cir. 1983), the district court reasoned that Pickard failed to produce information in the public domain showing that the DEA had "officially acknowledged" Skinner as an informant. *Id.* at 787. The Ninth Circuit found this application of the *Afshar* standard "too narrow in the context of subsection [552](c)(2) . . . [because] nothing in the statute or legislative history suggests that . . . 'official confirmation' requires that the government issue a press release publishing the identity of a confidential informant or that the director of a federal law enforcement agency personally identify the informant." *Id.* Instead, the court said that the term "official confirmation" simply requires "an intentional, public disclosure made by or at the request of a government officer acting in an authorized capacity by the agency in control of the information at issue." *Id.* The court found that the trial testimony from Skinner and the DEA agents met this standard because it "was not the product of an unofficial leak, nor was it improperly disclosed in an unofficial setting by careless agents." *Id.* However, the court stressed that its conclusion did not mean that the DEA was required to disclose any of the information Pickard had requested, but simply meant that it must take the next step of producing a *Vaughn* index to allow the district court to determine whether the contents of the officially confirmed documents were subject to the claimed exemptions. *Id.* at 788; *see also Boyd*, 475 F.3d at 389 ("Where an informant's status has been officially confirmed, a *Glomar* response is unavailable, and the agency must acknowledge the existence of any responsive records it holds.") (citing *Benavides v. Drug Enforcement Admin.*, 968 F.2d 1243, 1246 (D.C. Cir. 1992)).

Milliron does not simply rely on the arguments of counsel in *Sussmann*, as the FBI asserts. Instead, he provides pages of the trial transcript of FBI Agent Tom Grosso's testimony confirming Joffe's status as a CHS and discussing some of his activities in that role. (ECF No. 68-4 at PageID.301–04.) While Joffe did not testify at trial, as the informant did in *Pickard*, that distinction is immaterial for assessing the FBI's *Glomar* response because Agent Grosso's testimony satisfies the "official confirmation" requirement; it was disclosed on the public record in the Sussmann case by an FBI official acting in an authorized capacity to testify about Joffe's status. *See Pickard*, 653 F.3d at 787 ("The revelation of Skinner's identity as an informant was not the product of an unofficial leak, nor was it improperly disclosed in an unofficial setting by careless agents.") Accordingly, the disclosure of Joffe's status as a CHS renders a *Glomar* response unavailable. *See Cobar v. U.S. Dep't of Just.*, 953 F. Supp. 2d 1, 4 (D.D.C. 2013) (holding that in light of a DEA agent's sworn affidavit and other evidence, a *Glomar* response was no longer appropriate and the agency was required to file a *Vaughn* index addressing the records the agency possesses).

In light of the FBI's disclosure of Joffe's status as a CHS, it must search its records and file a *Vaughn* index providing a basis to assess any claimed exemptions. Therefore, Defendant's motion will be denied as to the Joffe records.

          **b.**    **Antonakakis**

Milliron also asserts that the FBI's *Glomar* response was improper as to the Antonakakis request based on information existing in the public domain. Specifically, he cites a July 24, 2021 email from Antonakakis to his colleagues at the Georgia Institute of Technology regarding an interview with the Durham team's lead prosecutor. He also cites an April 22, 2022 article quoting a July 2021 email from Antonakakis's counsel to the Durham team. (ECF No. 68 at PageID.282– 82 & 282 n.7.; *see* Case No. 1:23-cv-30, ECF No. 41-2 at PageID.297.) Milliron asserts that

Antonakakis's email, which he acknowledges was released pursuant to Georgia's Open Records Act, satisfies the public domain exception and thus precludes a *Glomar* response.

The Court disagrees. The cases discussing the public domain exception indicate that the prior disclosure of the asserted public information must have originated from the agency itself. *See Marino*, 685 F.3d at 1081 (discussing records showing that the DEA had previously released information linking the plaintiff's co-conspirator who testified against the plaintiff at trial and the DEA Narcotics and Dangerous Drug Information System number assigned to the co-conspirator); *Wolf v. CIA*, 473 F.3d 370, 378–79 (D.C. Cir. 2007) (discussing previous Congressional testimony of CIA Director Hillenkoetter). Milliron has neither argued nor shown that the Antonakakis email was disclosed by the FBI. "Prior disclosure of similar information does not suffice; instead, the specific information sought by the plaintiff must already be in the public domain by official disclosure." *Id.* at 378. Moreover, "in the context of a *Glomar* response, the public domain exception is triggered when 'the prior disclosure establishes the *existence* (or not) of records responsive to the FOIA request,' regardless whether the contents of the records have been disclosed." *Marino*, 685 F.3d at 1081 (quoting *Wolf*, 473 F.3d at 379) (italics in original). The disclosure of the Antonakakis email by a state university does not bear on the existence of FBI records responsive to Milliron's request. Therefore, the Court concludes that the FBI's *Glomar* response was proper as to Antonakakis.

### 2. Exemptions 6 and 7(C)

The FBI asserts that records pertaining to Antonakakis, if they exist, would be protected from disclosure by Exemptions 6 and 7(C). Exemption 6, 5 U.S.C. § 552(b)(6), exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." The Supreme Court has held that Congress did not

intend to limit this exemption "to a narrow class of files containing only a discrete kind of personal information." *United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982). Rather, the exemption applies broadly to "disclosure of information which applies to a particular individual[.]" *Id.* Exception 7(C), 5 U.S.C. § 552(b)(7)(C), exempts "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . ." The Sixth Circuit has observed that for documents that meet the "law enforcement purposes" threshold, the range of information that may be withheld under Exemption 7(C) is broader than the information that may be withheld under Exemption 6. *Rimmer*, 700 F.3d at 256; *see also United States Dep't of Just. v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 756 (1989) (noting that "the standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes is somewhat broader than the standard applicable to personnel, medical, and similar files"). Thus, where both exemptions are asserted as to the same documents, it is appropriate to consider them together "under the more protective terms of 7(C)." *Rimmer*, 700 F.3d at 256.

In considering exemption 7(C), a court must "balance the public interest in disclosure against the privacy interest Congress intended Exemption 7(C) to protect." *Detroit Free Press Inc. v. U.S. Dep't of Just.*, 829 F.3d 478, 481 (6th Cir. 2016) (en banc) (quoting *Reporters Comm.*, 489 U.S. at 776) (brackets omitted). "This balancing test is straightforward: If the privacy interest is greater than the public interest, the documents are exempt from disclosure. But if the public interest outweighs the privacy interest, Exemption 7(C) does not apply." *Cincinnati Enquirer*, 45 F.4th at 933. The privacy interests covered by Exemption 7(C) extend not only to individuals subject to criminal investigations, but also to "third parties mentioned in the documents, such as witnesses,

12

informants, and investigators." *Id.* (internal quotation marks omitted); *see also Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) (noting that "persons involved in FBI investigations—even if they are not the subject of the investigation—have a substantial interest in seeing that their participation remains secret") (internal quotation marks and citation omitted). An individual retains his or her privacy interest under FOIA even if some of the information already exists in the public sphere. *Id.* (citing *Reporters Comm.*, 489 U.S. at 764–65); *see also Abraham & Rose, PLC v. United States*, 138 F.3d 1075, 1083 (6th Cir. 1998) (noting that "a clear privacy interest exists with respect to such information as names, addresses, and other identifying information even if such information is already available on publicly recorded filings" (footnote omitted)). This remains true even if other government agencies have acknowledged the information subject to the exemption. *See People for the Ethical Treatment of Animals v. National Insts. of Health & Hum. Servs.*, 745 F.3d 535, 542 (D.C. Cir. 2014) (holding that privacy interests asserted under Exemption 7(C) remained intact even though other agencies had publicly acknowledged complaints against animal researchers).

The requesting party bears the burden of demonstrating "a weightier public interest in favor of disclosure." *Cincinnati Enquirer*, 45 F.4th at 934 (citing *National Archives & Rec. Admin. v. Favish*, 541 U.S. 157, 172 (2004)); *see also Hohman v. IRS*, No. 16-CV-13282, 2017 WL 6884334, at *7 (E.D. Mich. Dec. 18, 2017), *report and recommendation adopted*, 2018 WL 339882 (E.D. Mich. Jan. 8, 2018) (noting that once a privacy interest is identified, "the burden shifts to Plaintiff to show that there is a 'significant countervailing public benefit' in releasing the information that outweighs the privacy concerns" of the third-party (citing *Rimmer*, 700 F.3d at 257)). The existence of a significant public interest "depends on 'the extent to which disclosure would serve the "core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding *of*

13

*the operations or activities of the government.*'" *Detroit Free Press*, 829 F.3d at 485 (quoting *United States Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994)); *see also Davis v. U.S. Dep't of Just.*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) ("It is well established that the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about "what their government is up to."'" ((quoting *Reporters Comm.*, 489 U.S. at 773)). The Supreme Court has held that the requestor must establish the following:

> First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake. Second, the citizen must show the information is likely to advance that interest. Otherwise, the invasion of privacy is unwarranted.

*Favish*, 541 U.S. at 172.

As an initial matter, there is no dispute that the records at issue were compiled for law enforcement purposes. Ms. Hammer explains that "the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency . . . ." (ECF No. 66-1 at PageID.198.) Therefore, the Exemption 7(C) threshold is met. *See Jones*, 41 F.3d at 246 (noting that "the FBI is the archetypical federal law enforcement agency, and its methods were not so far out of bounds that the overall investigation is outside the law enforcement exception").

Milliron contends that the FBI has failed to show that Antonakakis has a privacy interest in any information that may be contained in responsive documents because, as his own email indicates, the interviews potentially reflected in the documents he seeks concern his work for the Defense Advanced Research Projects Agency (DARPA) rather than personal matters or facts that are embarrassing or humiliating in nature. (ECF No. 68 at PageID.285.) This argument ignores that individuals, including witnesses and informants who are not subjects of a law enforcement investigation, have "an obvious privacy interest" based simply on the fact that they provided

14

information during the investigation. *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995); *see also Dunkelberger v. Dep't of Just.*, 906 F.2d 779, 781 (D.C. Cir. 1990) ("Exemption 7(C) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity.") (internal quotation marks omitted). Moreover, Milliron fails to point to any disclosure by the FBI that would diminish Antonakakis's privacy interest, and this Court has previously found that Antonakakis's email was a private communication evincing no intent that it be made public. *See Milliron v. Dep't of Defense*, No. 1:23-cv-30, ECF No. 48 at PageID.335 (W.D. Mich.). For purposes of this exemption, there is no question that the records Milliron seeks would link Antonakakis to sensitive FBI inquiries.

As for the other side of the equation, Milliron fails to demonstrate that disclosure of the requested records would further a significant public interest. He asserts that the public has a significant interest in determining whether DARPA is misleading the public about its involvement in the DNC hack attribution (*id.* at PageID.285), but Antonakakis's email, by itself, is not compelling evidence that the requested information would confirm that the FBI or DARPA was engaged in illegal activity or misconduct relating to the DNC hack. *McCutchen v. U.S. Dep't of Health & Human Servs.*, 30 F.3d 183, 189 (D.C. Cir. 1994). In other words, Milliron's speculation about what the records might show based on the email is not a "meaningful evidentiary showing" that the records he seeks would further the asserted public interest. *Favish*, 541 U.S. at 175.

Even if Milliron has sufficiently demonstrated a weighty public interest in the information contained in the requested documents, he fails to show that this interest outweighs Antonakakis's strong privacy interest. "[P]rivacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated." *Martin v. Dep't of Just.*, 488 F.3d

15

446, 457 (D.C. Cir. 2007). As discussed above, Milliron fails to demonstrate a persuasive basis to conclude that Antonakakis's undiminished privacy interest should yield to the public interest Milliron asserts in this case. Therefore, the Court concludes that the FBI properly invoked Exemption 7(C).

Having reached this conclusion, the Court need not separately consider Exemption 6. *See Roth v. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (noting that, if the withheld information was "compiled for law enforcement purposes," there is "no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)").[5]

### IV. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part the FBI's motion for summary judgment and deny Milliron's request for summary judgment. Accordingly,

**IT IS HEREBY ORDERED** that Defendant FBI's Motion for Summary Judgment (ECF No. 65) is **GRANTED** as to the 302/1023 Request pertaining to Manos Antonakakis and **DENIED** as to the 302/1023 Request pertaining to Rodney Joffe. Plaintiff's request for summary judgment is **DENIED**. A separate order setting a status conference will issue.

Dated: September 30, 2025                          /s/ Sally J. Berens
                                                                        SALLY J. BERENS
                                                                        U.S. Magistrate Judge

---

[5] Although the FBI also raises Exemption 7(D) as to Antonakakis, the Court finds no need to address this exemption in light of its conclusion that the FBI properly invoked Exemptions 6 and 7(C).